FILED
2009 MAR 27 A 11:49
CLERK
U.S. BANKRUPTCY
COURT - PGH

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| HARRISON F. JORDAN and | : | Case No. 07-25082-TPA |
| BONNIE S. JORDAN, | : | |
| Debtors | : | Chapter 13 |
| | | |
| HARRISON F. JORDAN and | : | |
| BONNIE S. JORDAN, | : | |
| Plaintiffs. | : | |
| | : | |
| v. | : | Adversary No. 07-2561-TPA |
| | : | |
| GREENTREE CONSUMER | : | |
| DISCOUNT COMPANY AND | : | |
| BENEFICIAL CONSUMER | : | Hearing: April 27, 2009 at 10:00 A.M. |
| DISCOUNT COMPANY, | : | |
| Defendants | : | |

*Appearances:* Daniel R. White, Esq., for the Plaintiffs
Edward F. Voelker, Jr., Esq., for GreenTree Consumer Discount Company

### MEMORANDUM OPINION AND ORDER

The Chapter 13 Debtors, Harrison F. Jordan and his wife, Bonnie S. Jordan, ("Jordans") own and reside in a mobile home currently located on real property also owned by them. Defendant Greentree Consumer Discount Company ("Greentree") has a first mortgage lien on the Jordans' real estate and a security interest in the mobile home. The Jordans have filed a Complaint seeking to modify the rights of Greentree pursuant to *11 U.S.C. §506(d)*. Greentree answers that its rights are protected pursuant to *11 U.S.C. §1322(b)(2)* which prevents Chapter 13 debtors from modifying the rights of holders of secured claims that are secured "only by a security interest in real

1

property that is the debtor's principal residence." The pleadings are closed and the Parties have filed

cross-motions for summary judgment. The legal issues have been extensively briefed by the Parties

and, aside from the notable exception of a dispute as to the value of the combined real estate

parcel/mobile home,[1] there are no material factual disputes. For the reasons that follow, the Court

will deny both of the motions for summary judgment. However, pursuant to *Fed.R.Civ.P. 56(d)*,

incorporated pursuant to *Fed.R.Bankr.P. 7056*, the Court will enter an Order determining that

*Section 1322(b)(2)* does not protect the Greentree claim from modification. [2]


### FACTS AND PROCEDURAL HISTORY


On August 13, 2007, the Jordans filed their voluntary Chapter 13 bankruptcy Petition.

They are the owners, as tenants by the entireties, of a parcel of real estate located at 315 Smithfield

Highhouse Road, Smithfield Pa. ("the Smithfield Property") on which has been placed a 2001

Suncraft doublewide mobile home ("the Mobile Home") used as their principal residence.

Schedules accompanying the Petition list the Smithfield Property with a market value of $20,000

and the Mobile Home with a value of $6,000. The Petition further identifies a claim by Greentree

in the amount of $79,288.56 secured by a lien on the title to the Mobile Home and a first mortgage

---

[1]    The Parties have submitted competing appraisals as expert reports. See Document Nos. 28, 29. The Jordans' expert opines that the combined fair market value of the property at issue is $33,000 while Greentree's expert sets it at $75,000. Given these conflicting appraisals the Court is not in a position to make a valuation decision without hearing testimony and therefore cannot grant summary judgment. A valuation hearing will be necessary.

[2]    The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue. This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(A)* and *(O)*.

on the Smithfield Property.  After deducting for unpaid property taxes of $1,115, Greentree's claim

is therefore shown on the Petition as $24,885 secured and $54,403.56 unsecured.

On August 29, 2007, Greentree filed a Proof of Claim that alleged its claim to be fully

secured in the same amount of $79,288.56 and included copies of the documents that created the

Jordans' obligation to Greentree.  *See Proof of Claim* 2-1.  The other named defendant,  Beneficial

Consumer Discount Company ("Beneficial"), was identified in the Petition as holding a wholly

unsecured claim of $11,000 with a second mortgage on the Smithfield Property.[3]  Prior to the filing

of the within bankruptcy, Greentree had initiated both a foreclosure action and a replevin action

against the Jordans.

On September 7, 2007, the Jordans filed their proposed *Chapter 13 Plan*, Document

No.13, which, consistent with the Petition, alleged a downward modified secured claim for Greetree

in the amount of $24,885, with the balance of the Greentree claim to be treated as unsecured. On

September 21, 2007, Greentree filed an *Objection to Confirmation of Debtors' Chapter 13 Plan*

("Objection"),  Document No. 25, which alleged that the Jordans had greatly understated the value

of the Smithfield Property and the Mobile Home and contended that the Jordans were precluded

from modifying the terms of the Greentree security interest and mortgage because they cover and

---

[3]       Default judgment was previously entered in this matter in favor of the Jordans and against Beneficial.  Beneficial
is thus not involved in the pending motions for summary judgment.

involve the Jordans' principal residence[4]. On October 31, 2007, the Court confirmed the plan on an interim basis, while directing the Jordans to file an adversary proceeding to determine the extent and validity of the Greentree and Beneficial liens, and in the meantime, to pay Greentree $802.97 per month as adequate protection.

As they were directed, on November 12, 2007, the Jordans then filed the present Adversary Proceeding against Greentree and Beneficial titled as a *Complaint to Determine Secured Status* ("Complaint"). The *Complaint* asks the Court to find under *Section 506(d)* of the Bankruptcy Code that: (1) the Smithfield Property and the Mobile Home have a combined value of $26,000, subject to unpaid real estate taxes of $1,115; (2) "Greentree's mortgage is secured for $24,885 and unsecured for the balance of its claim;" and, (3) Beneficial's claim is wholly unsecured.[5] The *Complaint* further alleges that the Mobile Home is not permanently affixed to the Smithfield Property, maintains its original title status, i.e., as a "motor vehicle," issued by the Commonwealth of Pennsylvania and constitutes personal property. On November 26, 2007, Greentree filed its *Answer to Complaint to Determine Secured Status* ("Answer") challenging the valuation of the

---

[4]    Although not specifically stated in the *Objection*, it was readily apparent to the Court from the beginning that the basis for Greentree's position in this regard is *11 U.S.C. §1322(b)(2)* which provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims". This is the so-called "anti-modification provision" that was originally placed in the Bankruptcy Code by Congress with the belief that it would assist the residential real estate market by encouraging lenders to extend loans on more favorable terms by giving them special protection under the Code. *See, e.g., Nobelman v. Am. Savs. Bank*, 508 U.S. 324, 333 (1993) (Stevens, J., concurring). Since the Jordan's Petition was filed on August 13, 2007 it is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *BAPCPA*, signed into law on April 20, 2005, became effective in cases filed 180 or more days after its enactment. All references to Title 11 of the United States Code ("Bankruptcy Code") in this Opinion are to the post-*BAPCPA* version of the Bankruptcy Code unless otherwise stated.

[5]    As noted previously (see n.1, above), the Jordans have submitted an expert report which sets the fair market value of the Smithfield Property and the Mobile Home at $33,000. *See* Document No. 29 filed September 20, 2008. This is obviously at odds with the relief requested in the *Complaint*. The Jordans have not moved for leave to amend the *Complaint* to conform it with their expert report. As of this juncture the Court does not view the failure to do so an impediment to the case proceeding to final resolution. *See, e.g., Fed.R.Civ.P. 15(b)(2)* and *54(c)*, incorporated respectively by *Fed.R.Bankr.P. 7015* and *7054*.

Smithfield Property and the Mobile Home and arguing that the Jordans are precluded from modifying the terms of the security agreement and mortgage, or "cramming down" the Greentree lien, because they are entered and filed against the Jordans' principal residence, only.

Aside from the disputed valuation, the underlying, basic facts needed to decide this case are not complicated and not disputed. The Jordans bought the approximately one-acre Smithfield Property for $25,000 on September 30, 1999. A house was located on the Smithfield Property when the Jordans purchased the real estate but they later removed it. Thereafter, the Jordans decided to buy a mobile home and made financing arrangements with Conseco Finance Consumer Discount Company ("Conseco"), the predecessor in interest to Greentree. Pursuant to that arrangement, on August 23, 2000, the Jordans signed both a Note and a Mortgage, for a loan amount of $74,508.47.

The Mortgage indicates it is intended to encumber the "Smithfield Property." Additionally, the following language appears in the Mortgage form:

> a security interest in that certain 2001, 76 x 28 SUNCREST mobile home, serial number: ORDERED UNIT .

> The Note contains the following provision:

> xx SECURITY: This note is separately secured by (describe separate documents by type and date): A Mortgage/Deed of Trust dated today on the real property located at: BOX 315 HIGHHOUSE RD, SMITHFIELD, PA 15478
> This loan is also secured by a 1st lien on the following: 2001 FLEETWOOD HOMES SUNCREST- SER # ORDERED UNIT [6]

---

[6] Both the Mortgage and Note appear to be pre-printed general forms with blank areas to be filled in with information particular to the specific transaction. All of the quoted material from the Mortgage and Note shown in this Opinion looks to be material that was "filled in", as opposed to pre-printed material. There is no question that the underlined material was filled in and not part of the pre-printed form.

The Jordans did not actually acquire possession of the contemplated mobile home and place it on the Smithfield Property until several months after these documents were executed. The Certificate of Title for the Mobile Home displays a "date of issue" as "November 2, 2000," identifying the Mobile Home as a "2001 SUNCRAFT" with a vehicle identification number of PAFLY22AB48153SC13, a Pennsylvania title number of 55367634101, and a first lien in favor of Conseco. The Certificate of Title has not been surrendered to the Pennsylvania Department of Transportation.

When the Mobile Home was delivered to the Smithfield Property, the wheels and axles were removed and it was placed on blocks. All agree that since its placement on the Smithfield Property the Mobile Home has served as the principal residence of the Jordans. The Fayette County Board of Assessment has classified the Mobile Home as "real property" and assessed it at $7,200. The Smithfield Property has been assessed with a value of $19,400, for a total county assessment of $26,600.

### *SUMMARY JUDGMENT STANDARD*

For purposes of resolving a summary judgment motion, *Fed.R.Civ.P. 56* is made applicable to adversary proceedings through *Fed.R.Bankr.P. 7056.* Summary judgment is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c), Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)*.* Summary judgment is appropriate if no material factual issue

exists and the only issue before the court is a legal issue. *Earth Data Int'l of N.C., L.L.C. v. STV, Inc.*, 159 F. Supp. 2d 844 (E.D. Pa. 2001); *In re Air Nail Co.,* 329 B.R. 512 (Bankr. W.D. Pa. 2005). The test under *Fed.R.Civ.P.* 56 is "whether the moving party is entitled to judgment as a matter of law." *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). The standard for summary judgment does not change when the parties file cross-motions. *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 649 (E.D. Pa. 2002).

As noted, a material dispute of fact exists in this case as to the value of the combined property at issue requiring denial of summary judgment. However, *Rule 56* does not require the Court to only grant relief that is dispositive of the full matter in controversy. *Rule 56* specifically contemplates that a party moving for summary judgment may do so with respect to "all or part of the claim." *Fed.R.Civ.P. 56(a)*. Furthermore, *Rule 56* permits the Court to make rulings that, while short of entering a judgment on the entire case, nevertheless "shape" the litigation by disposing of legal issues or legal theories relevant to a claim. *See* 11-56 *Moore's Federal Practice - Civil* § 56.40[2] (2009). Although such shaping orders are sometimes referred to as "partial summary judgment" by both courts and parties, that term is not strictly accurate since no actual judgment is thereby being entered. *Id.* at § 56.40[1].

### DISCUSSION

The legal issue presented by this case is whether the Jordans are prevented from modifying Greentree's mortgage and security interest pursuant to the principal residence anti-modification provision of *Section 1322(b)(2)* of the Bankruptcy Code, which provides:

7

(b)    Subject to subsections (a) and (c) of this section, the plan may–
...
(2)  modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

*11 U.S.C. § 1322(b)(2) (emphasis added).*  There are thus two requirements for the application of this provision: (1) that the claim is secured only by real property; and, (2) that it is the debtor's principal residence.  *See In re Scarborough,* 461 F.3d 406, 411 (3d Cir. 2006).[7]  There is no dispute that the Mobile Home here is the Jordans' principal residence, so it is really only the first point that is at issue.  Before reaching that issue, however, a preliminary matter must be addressed.

BAPCPA

The *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ("BAPCPA") made substantial changes in the Bankruptcy Code.  Of particular relevancy to the present case was *BAPCPA*'s addition of the following, new definitional provision in the Bankruptcy Code:

(13A)  The term 'debtor's principal residence'
(A)    means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and
(B)    includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

---

[7]    Some courts state that there are 3 requirements under *Section 1322(b)(2)*, reaching that conclusion by, in effect, dividing the first requirement into two components: the claim is secured by real property, and, it is secured only by real property. *See, e.g., In re Davis,* 386 B.R. 182, 185 (6th Cir. BAP 2008).

8

*11 U.S.C. §101(13A)*.[7]  Although the Parties did not initially include a discussion of this provision in their arguments, the Court directed that they submit supplemental memorandums of law to address the question of whether and to what extent such language might affect the required inquiry under *Section 1322(b)(2)*.

Greentree argues that under the "plain language" of this *BAPCPA* provision the Jordans' Mobile Home should be deemed to be "absorbed" into the real property for *Section 1322(b)(2)* anti-modification purposes whether or not it is determined to be real property under state law.  Greentree contends that Congress clearly intended to expand the definition of a "debtor's personal residence" by, *inter alia*, categorizing a mobile home to fall within the definition of that term regardless of whether the mobile home is affixed to the real property.  Greentree argues that since the term "debtor's principal residence" appears only in *11 U.S.C. §1322(b)(2)* and its Chapter 11 counterpart, *11 U.S.C. §1123(b)(5)*, by adding *Section 101(13A)* to the Bankruptcy Code, Congress intended to expand the *Section 1322(b)(2)* protection for creditors.  Otherwise, Greentree contends, it would have been a meaningless change.  Greentree thus believes that regardless of the accompanying circumstances, because of the change brought about by *BAPCPA*, a mobile home is always considered "real property" for purposes of *Section 1322(b)(2)*.

---

[7]     *BAPCPA* also added a definition for "incidental property" which provides that, with respect to a debtor's principal residence it includes, among other things, "easements, rights, appurtenances, fixtures, rents, royalties,...[and] escrow funds."  *See 11 U.S.C. §101(27B)*

The Jordans counter by pointing out that *Section 1322(b)(2)* itself was not directly changed by *BAPCPA*. They claim that while the addition of *Section 101(13A)* to the Bankruptcy Code affected one prong of *Section 1322(b)(2)* (i.e., further defining "debtor's personal residence"), it did nothing to change the requirements of the remaining prong (i.e., "secured only by real estate"). The Jordans assert that a majority of courts to have considered the matter have agreed with their position.

The Jordans are correct that the large majority of cases deciding the issue have reached the conclusion that *Section 101(13A)* did not render *Section 1322(b)(2)* ambiguous and did not operate to change pre-*BAPCPA* law by extending the anti-modification provision of *Section 1322(b)(2)* to encompass security interests in residences that are not real property.[8] A review of these cases reveals a number of varied reasons for these courts arriving at this result. For one, even if the new definition under *Section 101(13A)* is substituted into *Section 1322(b)(2)* in place of the phrase "debtor's personal residence", it still does not "read out" or otherwise affect the "security interest in real property" language upon which courts have traditionally relied for years to require

---

[8]    *See In re Ennis,* 2009 WL 457922 (4th Cir., Feb. 25, 2009)*; In re Davis,* 386 B.R. 182 (6th Cir. BAP 2008); *In re Coleman,* 392 B.R. 767 (8th Cir. 2008); *Green Tree Servicing, LLC v. Harrison,* 2009 WL 82565 (W.D. La. 2009); *In re Shepherd,* 381 B.R. 675 (E.D. Tenn. 2008); *In re Lara,* 2008 WL 961892 (Bankr. S.D. Tex. 2008); *In re Cox,* 2007 WL 1888186 (Bankr. S.D. Tex. 2007); *In re Gearhart,* 2007 WL 4463342 (Bankr. E.D. Ky. 2007); *In re Fuller,* 2007 WL 3244113 (Bankr. M.D. N.C. 2007); *In re Bartolome,* 2007 WL 2774467 (Bankr. M.D. Ala. 2007); *In re Manning,* 2007 WL 2220454 (Bankr. N.D. Ala. 2007); *Kinder v. Vanderbilt Mortg. and Fin.,* 2008 WL 2230694 (S.D. Ohio 2008); *Moss v. Greentree,* 378 B.R. 655 (S.D. Ala. 2007); *In re Williamson,* 387 B.R. 914 (Bankr. M.D. Ga. 2008); *In re Oliveira,* 378 B.R. 789 (Bankr. E.D. Tex. 2007); *In re Herrin,* 2007 WL 1975573 (Bankr. S.D. Ala. 2007), affirmed by *Herrin v. Greentree-AL, L.L.C.,* 376 B.R. 316 (S.D. Ala. 2007); *In re McLain,* 376 B.R. 492 (D. S.C. 2007). *See also* 8 *Collier on Bankruptcy* ¶1322.06[1][a]. It is interesting to note that Greentree was on the losing end of the decisions in many of the cases listed here, which is apparently a reflection of the prominent position the company holds in the mobile home financing market.

an analysis under state law to determine whether a mobile home constitutes real property.[9] *See, e.g. Moss,* 378 B.R. at 658 ("Imposing the definition of 'debtor's principal residence' on *Section 1322(b)(2)* results only in the unstartling proposition that property can be a debtor's principal residence even if it is personalty, but it cannot be subject to the no-modification provision unless it is realty.  There is nothing absurd or illogical about such a state of affairs").

It has also been noted that even if the addition of *Section 101(13A)* to the Bankruptcy Code  does not effect an across-the-board change in the test under *Section 1322(b)(2)*, that, in and of itself, does not make it a meaningless or superfluous provision.  There remains a purpose in its inclusion in *BAPCPA* because, under certain circumstances, some states do permit a mobile home to be considered real property even if it is permanently affixed to real estate that the mobile home owner is renting.  *See In re Herrin* \*2 (citing statutes from Arizona, California, and North Carolina).

Other courts subscribing to the majority view have pointed out that if Congress had really intended to extend the anti-modification provision to personal property which is the debtor's residence, it could have done so with exceptional ease by merely redacting the word "real" or adding

---

[9]      If such a substitution is made, the pertinent language of *Section 1322(b)* would read:

> '...the plan may–
> (2) modify the rights of holders of secured claims, other than
> a claim secured only by a security interest in real property
> that is ~~the debtor's personal residence~~ <u>a residential structure,
> including incidental property, without regard to whether that
> structure is attached to real property</u>; <u>and ... includes a mobile
> or manufactured home ....</u>"

The majority view is that inclusion of this language without effecting a change in meaning is consequential, i.e., under a plain reading of the statute the real property issue under state law remains in place even after the *BAPCPA* changes are considered.

the words "or personal" where appropriate in *Section 1322(b)(2).  See, e.g.*, *Shepherd,* 381 B.R. at 679-80.

In contrast to the large number of cases that have adopted this majority view, there are only a few that arrive at a different result.  Greentree relies primarily on *In re Lunger,* 370 B.R. 649 (Bankr. M.D. Pa. 2007), to support its position.  In *Lunger* the court held that the creditor's lien on a tax escrow account, an item of personal property under Pennsylvania law, did not affect its status as a creditor whose claim was secured solely by an interest in real property that was the "debtors' principal residence" because of the new, expansive definition of "debtor's personal residence" added to the Bankruptcy Code by *BAPCPA*.  The *Lunger* court, while acknowledging that the escrow account was personal property, found it "difficult to comprehend a situation where real property would 'include' within its definition, an item of personalty, such as an escrow fund, without actually being 'absorbed' into the property like a fixture." 370 B.R. at 651.  It pointed out that while property interests are normally defined by state law, to the extent that state laws conflict with the bankruptcy laws they may be suspended.  *Id.* (citing *Butner v. United States,* 440 U.S. 48 (1979)).  The *Lunger* court therefore concluded that although the statute was "perhaps poorly worded", under *BAPCPA*, Congress had "effectively broadened" the definition of real property for the purpose of implementing *Section 1322(b)(2)*.[10]    The court was clearly ambivalent about reaching this conclusion, however, stating that even if it had erred it believed the result in the case would remain the same based on the Third Circuit case of *In re Ferandos,* 402 F.3d 147 (3d Cir. 2005) (concluding that the New Jersey view of a tax escrow as not representing additional collateral because the debtor

---

[10]    The only case cited in support of this conclusion by the *Lunger* court was *In re Shepherd,* 354 B.R. 505 (Bankr. E.D. Tenn. 2006).  *Shepherd*, however, was subsequently reversed by the district court at 381 B.R. 675.  See footnote 8, *supra*.

lacks any interest in such funds once deposited was one of "common sense").

Greentree also cites to *In re McDonald*, 2008 WL 2230073 (Bankr. W.D. Pa. 2008) where the Honorable Warren W. Bentz of this Court cited *Lunger* favorably in finding that a mortgage document that extended the mortgagee's security interest to "fixtures now or hereafter a part of the property" was nevertheless protected under the *Section 1322(b)(2)* anti-modification rule upon application of the new definitions added by *BAPCPA*.[11] However, under Pennsylvania law a "fixture' is by its very definition considered to have become part of the real estate. *See, e.g.*, *Maloney v. City of Philadelphia*, 535 A.2d 209, 212 (Pa. Commw. Ct. 1987). As such, the explanation the *Lunger* court felt compelled to make justifying the transformation of obvious personalty under existing state law concepts into real property was not required in *McDonald*. Thus, the same result could have been reached in *McDonald* without the need to conclude that *BAPCPA* had changed the test under *Section* 1322(b)(2). *See, e.g.*, the pre-*BAPCPA* cases of *In re Rodriguez*,

---

[11]    In addition to the new definition of "debtor's personal residence" added at *Section 101(13A)*, the *McDonald* court was faced with definition of "incidental property" added at Section 101(27B) because that definition includes the term "fixtures" within it. Similar to the example previously referenced in this Opinion at n. 9, above, with respect to defining the phrase "debtor's personal residence", a double substitution can be made incorporating both of the new definitions into *Section 1322(b)(2)* to further demonstrate the point. When that is done, the section reads:

> '...the plan may–
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is... *a residential structure, including* (A) property commonly conveyed with a principal residence in the area where the real property is located; (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and (C) all replacements or additions, *without regard to whether that structure is attached to real property; and ... includes a mobile or manufactured home ...*".

For convenience, the substitution for the definition of "debtor's personal residence" is shown in italics and the substitution for "incidental property" is underlined. From this demonstration it is apparent that the separate requirement of the claim being secured "only by a security interest in real property" remains an integral part of *Section 1322(b)(2)* after *BAPCPA* even when both new definitions are considered.

218 B.R. 764, 776 (Bankr. E.D. Pa. 1998) ("The Court will not exclude a mortgage from protection because it separately identifies as an item of security something that is part of the real estate under state law, such as...fixtures"); *In re Abruzzo*, 245 B.R. 201, 209-10 (Bankr. E. D. Pa. 1999).  For this reason, the Court finds *McDonald* to be distinguishable from the present case.

This Court's task in construing *Section 1322(b)(2)* must begin with an examination of the plain language of that provision because "when the statute's language is plain, the sole function of the courts - at least where the disposition is not absurd - is to enforce it according to its terms." *Oliveira,* 378 B.R. at 792 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1 (2000)). When the words of the statute are unambiguous and their meaning plain, the judicial inquiry ends there.  *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 383 (Bankr. W.D. Pa. 2008).  Thus, only where the language of the statute is ambiguous or leads to an absurdity should the Court even look beyond the statute to try to ascertain the legislative intent supporting the statute's enactment.  *Olivera*, 378 B.R. at 792.  It would also be improper to attempt to discern congressional intent by trying to compare the  predecessor statute (i.e., pre-*BAPCPA*), and the current version.  *See Lamie v. United States,* 540 U.S. 526, 534 (2004).

Therefore, when this Court follows the "plain meaning" approach set forth above it is constrained to find that the plain language of post-*BAPCPA Section 1322(b)(2)* is neither ambiguous nor absurd.  Its application here does not lead to an absurd result.  *Section 1322(b)(2)* continues to contain a "real property only" requirement notwithstanding the addition of *Section 101(13A)* to the Bankruptcy Code.  *See* n.9, 11, above.  In other words, *BAPCPA* did <u>not</u> effect a change in the law whereby security interests in mobile homes are automatically protected, regardless

14

of the surrounding circumstances, by the anti-modification provision of *Section 1322(b)(2)*. The Court thus finds that the majority view is the correct one and adopts it.

*Section 1322(b)(2) Analysis*

Having concluded that *BAPCPA* did not change the requirements for the anti-modification provision found in *Section 1322(b)(2)*, the Court now turns to an analysis of that provision in light of the undisputed facts of this case, beginning with a summary as to the legal arguments of each side.

*(A)   Greentree's Position*

Greentree contends that the Mobile Home must be considered real property rather than personal property under Pennsylvania law because the Jordans intended to attach it permanently to the Smithfield Property, thus making Greentree's entire claim one secured by a security interest in real property that is the Debtors' personal residence.  Greentree relies principally on  *In re Nowlin*, 321 B.R. 678 (Bankr. E.D. Pa. 2005), in which the court stated that the issue of whether a claim on a mobile home can be modified in light of *Section 1322(b)(2)* depends on whether the mobile home constitutes real or personal property as determined pursuant to state law.

The *Nowlin* court looked to Pennsylvania law and found that chattels used in connection with real estate fall into one of three classes: (1) those which are manifestly furniture, which always remain personalty; (2) those which are so annexed to the property that they cannot be removed without material injury to the real estate, which are always realty; and, (3) those which,

15

although physically annexed to the realty can be removed without materially injuring either the chattels themselves or the realty, which can become part of the realty or remain personalty depending on the intention of the parties at the time of annexation. *See* 321 B.R. at 681 (citing *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933)).

The *Nowlin* court found that mobile homes fall into the third category of chattels, such that it was necessary to look to the intentions of the parties and consider a number of facts and circumstances. *Id.* After examining these factors, the court concluded that the mobile home at issue was personalty as a matter of law. Among the key factors cited by the court were that the mobile home had not been attached to the realty by a concrete foundation and it only rested on cinder blocks such that it could be removed from the property without damage to either the land or the mobile home. The *Nowlin* court found that this outweighed the fact that the wheels had been removed and the mobile home had, *inter alia*, skirting, a skylight, two attached decks, and all standard utility hookups. Also, the debtor did not own the land and did not even have a long term lease on it. Nor did she ever surrender the title to the mobile home to the creditor. In making its determination, the *Nowlin* court found the "most compelling" evidence, however, was that the debtor never sought the creditor's permission to attach the mobile home to the land, something which would have been required under the contract of the parties. Greentree argues that *Nowlin* sets forth the proper approach for this Court to take, but that unlike the decision in that case, the Court here should find as a matter of law that the Debtors' Mobile Home is real property.

16

*(B)  Jordans' Position*

The Jordans argue that *Section 1322(b)(2)* does not prevent them from modifying Greentree's claim because that claim is not "only" secured by, that is, limited to, real estate since the Mobile Home *is* personal property.  The Jordans further argue that *Nowlin* does not help Greentree because it is distinguishable on its facts and because, they say, *Nowlin* did not follow clear Third Circuit directives regarding the application of *Section 1322(b)(2)*.

As to the latter point, Jordans cite to *In re Wilson,* 895 F.2d 123 (3d Cir. 1990), which they claim stands for the proposition that the subjective intent of the parties is irrelevant for purposes of *Section1322(b)(2)*.  They also direct this Court to *Scarborough v. Chase Manhattan Mortgage Corp.*, 461 F.3d 406 (3d cir. 2006), where the Third Circuit made clear that "the critical moment" for deciding this very issue is

> ... when the creditor takes a security interest in the collateral.  'It is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date'.

461 F.3d at 412 **(**quoting *In re Bulson***,** 327 B.R. 830, 846 (Bankr. W.D. Mich. 2005)).

In support of their argument, the Jordans point out that the Note and Mortgage documents separately refer to the land and the Mobile Home and clearly state that Conseco (Greentree's predecessor in interest) was at that time granted a mortgage on the land and a security interest in the Mobile Home.  Further, the Jordans claim and Greentree does not dispute, that they did not actually take possession of the Mobile Home until a few months after executing these

17

documents.  They argue that the language from the Note and Mortgage clearly indicates an intention

for a mortgage to be placed on the real estate and a separate security interest to attach to the personal

property.  When those documents were signed, they argue, is the "critical moment" for determining

the applicability of *Section 1322(b)(2).*  They also argue that it is significant that the Mobile Home

was not even specifically identified at the time of the loan document execution and, in fact, was not

acquired by them until several months later.  As a result of all the foregoing, the Jordans claim that

the Mobile Home can only be classified as personalty, not real property.  Finally, the Jordans argue

that even if the Court were to look at the *Nowlin* factors, the same conclusion should be reached

since only the first factor (common ownership of land and mobile home) would support a finding

of realty in this case.

*(C)   Analysis*

As a preliminary matter, it is important to keep in mind that Greentree bears the

burden of proof to show that its claim falls within the anti-modification protections afforded by

*Section 1322(b)(2).  See In re Picht*, 396 B.R. 76, 79 (Bankr. D. Kan. 2008); *In re Petrella*, 230 B.R.

829, 832 (Bankr. N.D. Ohio 1999); *In re Larios,* 259 B.R. 675, 678 (Bankr. N.D. Ill. 2001).  Thus,

it is up to Greentree to convince the Court that its claim is secured only by real property.  If

Greentree fails in this regard, the Court must find in favor of the Jordans on this issue.

18

Greentree faces an immediate obstacle in meeting this burden of proof. It filed three Proofs of Claim in this case, each one signed by a company representative under penalty of perjury.[12] In each case Greentree had the choice of describing its collateral as either "real estate," "motor vehicle," or "other" by checking the appropriate box. In each case Greentree selected the "other" box and added a description of the collateral as "2001 28 x 76 Fleetwood Enterprise ...Manufactured Home and Appurts". The Court believes that at the very least it is inconsistent for Greentree to now assert that its collateral is only in real estate for the purpose of obtaining the protection of *Section 1322(b)(2)* while having taken a different position when it filed the Proofs of Claim. The question is whether this conduct goes beyond a mere inconsistency or actually constitutes a binding admission that precludes Greentree from taking a position contrary to its Proofs of Claim on this point.

The Court concludes that this question is properly analyzed under the law of judicial admissions. A "judicial admission" is an admission made by a party in pleadings, stipulations and the like. *In re Pittsburgh Sports Assocs. Holding Co.,* 239 B.R. 75, 81 (Bankr. W.D. Pa. 1999). An unequivocal judicial admission is binding on the party who made it for the purposes of the case in which it is made. *Id.* A judicial admission is to be distinguished from an evidentiary admission, for example, a statement made outside the pending litigation that is inconsistent with a position being taken in the pending litigation and which is admissible but not conclusive. *See, e.g.*, *Matter of*

---

[12]        *See* Proofs of Claim Nos. 2-1, 9-1 and 16-1. Claim No. 2-1, the main one, was filed on August 29, 2007, as a secured claim of $79,288.56. Claim No. 9-1 was filed on October 11, 2007, as a secured claim of $94.33. Claim No. 16-1 was filed on February 15, 2008 as a secured administrative claim of $235.81. Although the Proofs of Claim were not made part of the record in this Adversary Proceeding, the Court may take judicial notice of any admissions made therein. *See Fed.R.Evid. 201*; Hon. Barry Russell, *Bankruptcy Evidence Manual* (Ed. 2007) at § 201.5.

*Cont'l Airlines, Inc.,* 125 B.R. 415, 417 (Bankr. Del. 1991).

The Court concludes that the "statement" by Greentree in the Proofs of Claim regarding the nature of the collateral is a judicial admission, not simply an evidentiary admission. It is well-recognized that the filing of a proof of claim is analogous to the filing of a complaint in a civil action. *In re Arnott,* 388 B.R. 656, 658 (Bankr. W.D. Pa. 2008). If this were just a contested matter involving an objection to Greentree's claim there is no doubt that the statements in the Proofs of Claim would be judicial admissions. *See, e.g.*, *In re Basin Res. Corp.*, 182 B.R. 489, 492-93 (Bankr. N.D. Tex. 1995).

Although the present adversary proceeding is separate from the "main" bankruptcy case in which the Proofs of Claim were filed, it is functionally equivalent to an objection to, or counterclaim to, Greentree's claim because it is challenging the secured status of Greentree's claim. *Id.* As such, it is proper to treat the statements as to the nature of the collateral contained in Greentree's Proofs of Claim as binding, judicial admissions in this adversary proceeding. *See Id.* (creditor's statement in proof of claim that oil and gas interests of debtor were "securities" found to be a binding judicial admission in *Section 510* adversary proceeding); *In re Perry,* 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008) (proofs of claim filed by creditors are judicial admission); *In re Allegheny Health, Educ. & Research Found.*, 321 B.R. 776, 799-800 (Bankr. W.D. Pa. 2005) (representations made by claimant in her pre-petition district court complaint that she attached to her proof of claim in the bankruptcy court constituted binding and conclusive judicial admissions); Hon. Barry Russell, *Bankruptcy Evidence Manual* (Ed. 2007) §801.22.

20

The Court therefore concludes that Greentree has made a judicial admission that its collateral consists of something "other" than only real estate. This admission would in and of itself be a sufficient ground to find that Greentree has failed to meet its burden of proof as to entitlement to protection under *Section 1322(b)(2)*. Nevertheless, since the Court is denying the cross motions for summary judgment and in recognition of the possibility that Greentree could seek to undo the effect of the judicial admission by seeking leave to amend its Proofs of Claim *nunc pro tunc* or appeal the evidentiary ruling, the Court deems it inexpedient to ground its decision solely on that basis. Instead, the Court will proceed to consider the arguments of the Parties as if no judicial admission had been made.

Turning then to the substance of the issue presented, the Court believes the Third Circuit's decision in *Scarborough* is its source of initial focus. The issue in *Scarborough* was whether a mortgage on a multi-unit dwelling in which the debtor resided in one of the units qualified for the anti-modification protection of *Section 1322(b)(2)*. The property was a former single-family residence that had been converted to a two-unit prior to the debtor's purchase of it. The debtor lived in the apartment unit on the first floor and rented the second floor apartment to a tenant. The debtor testified, and the bankruptcy court accepted, that she had informed the bank that such an arrangement was always her intent. Nevertheless, the bankruptcy court refused to permit modification of the mortgage on these facts and the district court affirmed. The Third Circuit reversed, accepting the debtor's argument that the claim did not meet the anti-modification requirements of the *Section 1322(b)(2)* exception because of the presence of an income-producing

21

rental unit on the property.[13]

The *Scarborough* court found that the phrase "real property that is the debtor's principal residence" meant that the real property that secures the mortgage must be only the debtor's principal residence for *Section 1322(b)(2)* to apply, not merely property that includes or contains the debtor's principal residence. The court found that this interpretation of the statute was consistent with its pattern of reading *Section 1322(b)(2),* literally and narrowly. The *Scarborough* court further noted that the Third Circuit Court has consistently refused to recognize a *de minimis* exception to the statutory requirements of *Section 1322(b)(2)* for it has repeatedly held that a creditor who takes any interest in collateral that is not real property does not receive anti-modification protection. 461 F.2d at 411 (citing cases for the principle that bifurcation is available when a security interest includes personal property). With that by way of background, the *Scarborough* court recognized several other relevant concepts that are of particular interest here.

First, the court pointed out that it has held that the subjective intent of the parties is irrelevant under *Section 1322(b)(2)*, citing to its earlier decision in *In re Wilson* (where a mortgage document gave the creditor a security interest in items of personal property, the *Section 1322(b)(2)* anti-modification requirement was not met even though the creditor asserted the additional security had no independent value and it did not even file financing statements for it, noting that "Commonwealth's subjective desire to obtain an interest in the property is irrelevant...If

---

[13]    The debtor raised another argument, namely, that the mortgage gave the bank a lien on rents from the property and thus granted the bank an interest in collateral that was not real property.  The court rejected that argument, finding that under Pennsylvania law real property is defined to include rent. 461 F.3d at 410.  *Scarborough* was a pre-*BAPCPA* case.  This finding is consistent with the later addition of the "incidental property" definition contained in *BAPCPA. 11 U.S.C. §101(27B)(B)*.

Commonwealth wishes otherwise, it should delete such language from its agreements.").

Second, the *Scarborough* court responded as follows to the creditor's objection that a debtor could sidestep the home mortgage anti-modification exception by adding a second living unit to the property after the loan transaction, but prior to filing bankruptcy:

> However, for purposes of §1322(b)(2), the critical moment is when the creditor takes a security interest in the collateral. "It is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date. [citing *In re Bulson, supra*]"
>
> We have noted that, when considering whether a mortgagee has taken a security interest in any property other than real property, we look to the terms of the mortgage...*Similarly, here, we look to the character of the collateral at the time of the mortgage transaction.*

461 F.3d at 412 (citations omitted, emphasis added). *Scarborough* thus places the Third Circuit firmly within the group of cases holding that entitlement to protection from modification under *Section 1322(b)(2)* is determined based on the circumstances existing as of the time of taking out the loan and executing the loan documents.[14]

Third, the court found further support for its position by contrasting it with an alternative type of approach that would require applying a multi-factor test to determine whether a mortgage may be modified. The court stated that such a test "introduces uncertainty and unpredictability to residential mortgage transactions because it requires courts to engage in a

---

[14]    Another group of cases, perhaps the majority, holds that the relevant circumstances are those existing as of the filing date of the petition. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* (3d Ed. 2000) §121.2. Since the Third Circuit has spoken on this issue there is no reason for this court to consider the reasoning behind the two positions.

subjective, hindsight analysis as to the intent of the parties." 461 F.3d at 414.  In other words, the

court wanted to avoid just the sort of analysis that must be undertaken in the *Nowlin* court's

approach, at least insofar as that case considers the intent of the mobile home owner to be a relevant

factor.[15]  By focusing on the timing element of the transaction at issue here, the need for any

subjective, 20/20 hindsight review of the facts which can clearly lead to strong arguments for a

finding in favor of either Party and inconsistent results, is avoided.

For all the above reasons, Greentree's position must fail under *Scarborough.* That

case makes clear that the preeminent issue is the character and extent of the collateral at the time the

loan is signed.  Although the Jordans owned the Smithfield Property as of that time (August 2000),

the Mobile Home itself can by no stretch be considered real property as of then since it was not yet

even in the Jordans' possession, and was thus obviously not situated on any land of theirs where it

might have become part of the real estate.[16]  *See, e.g., Duffee v. Judson*, 380 A.2d 843, 846 (Pa.

Super. 1977) (contract for sale of mobile home which was subsequently delivered to buyer was a

contract for "goods" under the *Uniform Commercial Code* and not one for real estate).  The loan

documents indicate that the agreement was for a mortgage on the Smithfield Property and a separate

security interest in the mobile home which was to be acquired.  Greentree has pointed to nothing in

---

[15]    The particular context in which this came up in *Scarborough* was the court's recognition that some other courts faced with the question of whether a mortgagee should receive anti-modification protection when there is an income producing unit in the debtor's property have concluded that a flexible multi-factor test should be applied to determine whether the parties intended the loan to be residential or commercial in nature, with modification permitted only if it is found to be the latter.  461 F.3d at 414. The *Scarborough* court rejected that approach because of the "uncertainty and unpredictability" it would engender.  *Id.*  The same rationale would be applicable in a multi-factor test including intent that is designed to determine if property was real or personal.

[16]    The record is silent as to the "whereabouts" of the Mobile Home between the time of the loan agreement and the time it was acquired by the Jordans. The Court assumes it was either in the process of being manufactured or was part of the inventory of a distributor or dealer during this period.

the loan documents stating that the Parties agreed that the Mobile Home would become part of the real estate and nothing which would have even required the Jordans to place it on the Smithfield Property after they took possession. Indeed the Note itself recognized the possibility that the loan collateral could be personal property.[17]

For these reasons, the Court finds it does not need to consider the various "factors" the Parties have pointed to as allegedly being indicative of whether the Mobile Home might *now* be considered part of the real property under Pennsylvania law. These factors start from an incorrect premise because under *Scarborough* the Court must look to the character of the collateral as it was when the loan was created. Greentree has cited no facts or legal authority for the proposition that the Mobile Home could conceivably have been considered real property as of that time and thus it has failed to meet its burden of proof in this case.

### CONCLUSION

Summary judgment cannot be granted in this case due to the material, factual dispute as to the value of the collateral. Despite that, based upon the foregoing findings of fact and conclusions of law, the Court will exercise its authority under *Fed.R.Civ.P. 56(d)* and issue a ruling finding in favor of the Jordans and against Greentree on the issue of whether the claim of Greentree is protected from modification pursuant to *Section 1322(b)(2)*. *In re Jacobs*, 381 B.R. 147, 153 (Bankr. E.D. Pa. 2009). Accordingly, a hearing limited to the issue of valuation will be scheduled.

---

[17]   The provision in the Note entitled "REAL ESTATE OR RESIDENCE SECURITY" starts out with: "If this note is secured by real estate *or a residence that is personal property*..." (emphasis added).

25

Although strictly speaking, it was not relevant to the Court's decision, it is a fair point to note that at first blush the result reached here might be viewed as chilling the availability of credit for individuals seeking to finance the purchase of a mobile home to be placed on their land by denying potential lenders the anti-modification protection of *Section 1322(b)(2)*.  This case, however, was decided on its particular facts and it is not intended to declare a blanket rule that would always deny such creditor protection in similar circumstances.  Had the Parties' loan agreement required  the Mobile Home to be placed on and become part of the real estate the result may well have been different.  In cases such as the present one where there is a delay between the date of the loan and the acquisition of the mobile home, there would also seem to be no impediment to a creditor requiring as part of the loan agreement a "renewal" of the security interest once the mobile home has been placed on the property to provide it with even greater assurance that it will receive the protection afforded by *Section 1322(b)(2)*.

An appropriate Order will follow.

## **ORDER**

*AND NOW*, this *27th* day of *March, 2009*, for all of the foregoing reasons as set forth in the above *Memorandum Opinion* and based upon the findings of fact and conclusions of law specified therein, it is hereby ***ORDERED, ADJUDGED and DECREED*** that the ***Motion for Summary Judgment*** filed by Plaintiffs at Document No. 35 is ***DENIED*** and the ***Motion for Summary Judgment of Green Tree Consumer Discount Company*** filed at Document No. 36 is ***DENIED.***

26

It is **FURTHER ORDERED**, pursuant to *Fed.R.Bankr.P. 56* and *Fed.R.Civ.P. 56(d),* that the Plaintiffs may modify the rights of Greentree in its secured claim pursuant to *11 U.S.C. §1322(b)(2)*. A separate Order will be issued denying Greentree's *Objection* to the Chapter 13 Plan filed by the Debtors and set a hearing for purposes of confirming said Plan.

It is **FURTHER ORDERED** that a valuation hearing limited to the issue of the value of the assets that secure Greentree's claim is scheduled for ***April 27, 2009 at 10:00 A.M***. in Courtroom D, 54th floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pa. 15219.

Thomas P. Agresti
United States Bankruptcy Judge.

Case Administrator to mail to:
    Ronda Winnecour, Esq., Ch. 13 Trustee
    Via CM:ECF e:mail
    Debtors
    Debtors'/Plaintiffs' Counsel
    Counsel for the Defendant

27